# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

In Re: K.S.

No. 15-0051 (Calhoun County 13-JA-54)

**FILED**

June 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.S., by counsel Teresa C. Monk, appeals the Circuit Court of Calhoun County's December 22, 2014, order terminating her parental rights to K.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Anita Harold Ashley, filed a response on behalf of the child supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in finding she abused both K.S. and her step-daughter M.S., in implementing a family case plan that addressed issues upon which petitioner was not adjudicated, in finding that she did not successfully complete her improvement period, and in terminating her parental rights to K.S.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2013, the DHHR filed an abuse and neglect petition alleging that M.S's father, J.S., sexually abused the child. Petitioner and her daughter K.S. also resided in this home. The petition further alleged that petitioner emotionally abused M.S. when she denied the sexual abuse occurred and blamed the child for "flaunting" herself in front of her father. The petition

---

[1]In the circuit court, this abuse and neglect proceeding concerned both petitioner's biological daughter, K.S., and petitioner's step-daughter, M.S. While petitioner appeals certain adjudicatory findings made in regard to her abuse of M.S., the circuit court did not terminate any rights petitioner may have to M.S., and petitioner does not make any arguments regarding M.S. on appeal. As such, this memorandum decisions concerns only the termination of petitioner's parental rights to K.S.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

also alleged a failure to protect the child or provide a safe, clean, living environment, and that the other child in the home, K.S., was also abused by these conditions.

The circuit court held an adjudicatory hearing in November of 2013. Prior to the hearing, the circuit court took in camera testimony from M.S., then fourteen years old. During her testimony, M.S. disclosed repeated acts of sexual abuse by J.S. over the preceding months. Her testimony was consistent with prior disclosures and a transcript was provided to counsel in advance of the adjudicatory hearing. During the hearing, the father voluntarily relinquished his parental rights to both M.S. and K.S. As to petitioner, she admitted she was jealous of the relationship between M.S. and her father and stated that she felt like M.S. was more of a wife to him than she was. According to M.S.'s testimony, petitioner was home during several of the instances of abuse. Ultimately, the circuit court adjudicated petitioner as an abusing parent upon the finding that she emotionally abused M.S. and that K.S, as another child in the home, was also abused. However, the circuit court found that the DHHR failed to establish abuse by virtue of a failure to protect the children or upon the conditions in the home.

In January of 2014, the circuit court granted petitioner a post-adjudicatory improvement period. The terms of the improvement period required petitioner to familiarize herself with the signs of sexual abuse; avoid exposing her child to inappropriate individuals; be able to assess situations that could place the child in danger; provide a safe and clean home environment; maintain stable employment; meet her own emotional needs; and accept responsibility for her actions. Further, petitioner was required to acknowledge that J.S. sexually abused M.S. so that she could learn to prevent further abuse.

Two months later, the circuit court held a review hearing. Despite the father's indictment and incarceration for sexually abusing M.S., petitioner testified that she still didn't know if he had sexually abused the child. Thereafter, the circuit court held a dispositional hearing in September of 2014. Although petitioner participated in services, a provider testified that petitioner failed to learn the safety aspects of sexual abuse. And despite recognizing that M.S. displayed multiple signs of sexual abuse, petitioner never acknowledged that the abuse occurred. As such, the provider testified regarding concerns about returning K.S. to petitioner's care. Petitioner's therapist also testified that petitioner "never came to terms with those things [that] were really happening in the home." The therapist also testified that, despite repeatedly confronting petitioner with the evidence supporting the father's sexual abuse, petitioner refused to accept that M.S. was sexually abused. As such, the therapist testified that petitioner made no progress in learning how to protect K.S. from potential sexual abuse. The circuit court also found that petitioner continued her relationship with the father, as evidenced by numerous recorded telephone conversations with him while incarcerated and a caseworker observing him in the home in the days prior to the dispositional hearing. Ultimately, the circuit court terminated petitioner's parental rights to K.S. Petitioner appeals from the dispositional order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court adjudicating petitioner as an abusing parent, in implementing services designed to remedy the conditions of abuse, in finding petitioner failed to successfully complete her improvement period, or in terminating petitioner's parental rights to K.S.

To begin, the Court finds no error in the circuit court adjudicating petitioner as abusing M.S. Petitioner's argument on this issue concerns an alleged insufficiency of the evidence to support her emotional abuse of M.S. However, based upon our review of the record, the Court finds that the evidence was sufficient to adjudicate petitioner as having emotionally abused M.S. According to the record, petitioner not only chose not to believe M.S. throughout the pendency of these proceedings, but when M.S. disclosed sexual abuse to her, petitioner repeatedly called the child a liar. Moreover, petitioner then told M.S. that she wanted the child to confront her father in front of family and friends. The record also shows that petitioner blamed M.S. for the sexual abuse because she dressed provocatively and flirted with older men. In short, petitioner made it clear that she felt that M.S. had victimized her and her entire family by making the disclosures of sexual abuse.

While petitioner argues that the definition of emotional abuse as found in West Virginia Code § 49-1-3(1)(A) is insufficient to establish what conduct constitutes such abuse, the Court finds that this statute is sufficiently specific and that petitioner's conduct in response to M.S.'s disclosure of sexual abuse constitutes emotional abuse. Moreover, the Court finds no merit to petitioner's argument that there was no evidence of the emotional impact her actions had upon the child. In the instant proceeding, such evidence was unnecessary in light of the overwhelming evidence of petitioner's continued minimization of the sexual abuse in her home and her lack of support for the victim, M.S. For these reasons, the Court finds no error in the circuit court adjudicating petitioner as having abused M.S. by her response to the child's disclosure of sexual abuse.

As to petitioner's argument that the circuit court erred in adjudicating K.S. as abused, the Court finds no merit to this argument. Petitioner's argument on this issue is based upon our prior holding in which we stated that

[w]here there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is

3

not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W.Va.Code, 49–1–3(a) (1994).

Syl. Pt. 2, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995). According to petitioner, because the Court did not include emotional abuse in this holding, then emotional abuse as to one child in a home cannot be imparted to another child in the home. The Court, however, disagrees. Petitioner's argument ignores the fact that *In re Christina L.* did not concern emotional abuse and, therefore, did not include the same in the holding cited above. Petitioner also ignores the plain language of West Virginia Code § 49-1-3(1)(A), which states that "'[a]bused child' means a child whose health or welfare is harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts . . . emotional injury . . . upon the child *or another child in the home*[.]" (Emphasis added). Based upon the plain language of this statute, it is clear that petitioner abused K.S. by inflicting emotional abuse on M.S. This is true even if petitioner's assertion that K.S. was not paying attention during any such instance of emotional abuse is accurate. For these reasons, the Court finds no error in the circuit court adjudicating K.S. as an abused child.

As to petitioner's assignment of error alleging that the circuit court erred in implementing a family case plan that addressed issues for which petitioner was not adjudicated, we find no merit to this argument. While it may be true that certain issues, such as the conditions in the home and an alleged failure to protect the children, did not rise to the level of abuse or neglect, the Court finds no error in the DHHR attempting to remediate them. Moreover, the record is clear that petitioner agreed to this case plan and did not object to the same when implemented. This Court has previously stated that "silence may operate as a waiver of objections to error and irregularities at the trial which, if seasonably made and presented, might have been regarded as prejudicial." *State v. Proctor*, 227 W.Va. 352, 359, 709 S.E.2d 549, 556 (2011) (quoting *State v. Grimmer*, 162 W.Va. 588, 595, 251 S.E.2d 780, 785 (1979), overruled on other grounds by *State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980)). Because petitioner failed to object to the case plan's terms, we find that she has waived any argument on appeal as to this issue. Moreover, the record is clear that in terminating petitioner's parental rights, the circuit court did not rely on petitioner's non-compliance with any term that she claims was erroneous. As such, we find no error in this regard.

Petitioner next argues that the circuit court erred in finding that she failed to successfully complete her improvement period because she did not believe that J.S. sexually abused M.S. Upon our review, we find no error based upon the voluminous evidence that petitioner failed to complete the terms of her improvement period. Contrary to petitioner's argument that "there was no condition . . . which required her to absolutely believe the child," petitioner's case plan required that she "acknowledge [J.S] sexually abused his biological daughter and take appropriate measures to ensure [K.S.] is safe." Despite this condition, the record shows that petitioner refused to believe that M.S. was sexually abused and even continued her relationship with the abuser, J.S.

Petitioner's therapist testified that although petitioner made certain progress in her services, she failed to make any progress in acknowledging that J.S. sexually abused M.S., despite overwhelming evidence the abuse occurred. During therapy, petitioner minimized

obvious signs that M.S. was abused and failed to recognize what she might do differently to protect K.S. in the future. Ultimately, these issues resulted in the therapist terminating services for petitioner because of her lack of progress in acknowledging the abuse in the home.

Further, while petitioner argues that she was in the process of divorcing J.S., the record is clear that she possessed a packet of documents to obtain a pro se divorce proceeding for five months prior to disposition, yet failed to ever initiate the process. Moreover, recorded telephone calls between petitioner and J.S. while the latter was incarcerated evidenced their continued relationship. Contrary to petitioner's argument that J.S. was found in her home upon his release and shortly before disposition because he was there to help her complete the divorce application, the service provider who discovered him did not believe petitioner's account of his presence in the home. Ultimately, the circuit court also found petitioner's explanation lacked credibility and further found that petitioner continued her relationship with J.S. throughout these proceedings. Because petitioner failed to acknowledge that J.S. sexually abused M.S. and continued her relationship with the child's abuser in direct contradiction to the terms of her improvement period, we find no error in the circuit court finding that petitioner failed to successfully complete her improvement period.

Finally, the Court finds no error in the circuit court terminating petitioner's parental rights to K.S. Petitioner bases her argument on this issue primarily upon our prior holding, wherein we stated that

> W.Va.Code, 49–1–3(a) (1984), in part, defines an abused child to include one whose parent knowingly allows another person to commit the abuse. Under this standard, termination of parental rights is usually upheld only where the parent takes no action in the face of knowledge of the abuse or actually aids or protects the abusing parent.

Syl. Pt. 3, *In re Betty J.W.*, 179 W.Va. 605, 371 S.E.2d 326 (1988). However, petitioner's reliance on this holding is misplaced. While petitioner may be correct that she did not aid J.S. in his sexual abuse or knowingly allow it to be committed, petitioner erroneously argues that the circuit court's termination of her parental rights "did not make sense in light of the adjudicated deficiencies." The Court does not agree. As noted above, petitioner was adjudicated for her own distinct emotional abuse of M.S. that was also imparted to K.S. as another child in the home at risk of abuse. Petitioner was granted an improvement period to remedy these conditions of abuse, which included a requirement that she acknowledge the sexual abuse in her home so as to better respond to the same in the future. However, the circuit court specifically found that petitioner failed to complete this requirement, among others, and that she did not successfully complete her improvement period.

This same evidence supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect. Pursuant to West Virginia Code § 49-6-5(b)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which

5

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

The circuit court specifically made this finding in regard to petitioner, based upon the evidence above related to her non-compliance with the terms of her improvement period and her refusal to acknowledge the sexual abuse perpetrated in her home. The circuit court further found that termination of petitioner's parental rights was in K.S.'s best interests. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings.

For the foregoing reasons, we find no error in the decision of the circuit court and its December 22, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: June 15, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II